```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
PATRIA NUNEZ,                                               :

                        Plaintiff,                          :

              -against-                                     :   REPORT AND RECOMMENDATION

                                                            :       11 Civ. 8519 (PAE) (KNF)
COMMISSIONER OF SOCIAL SECURITY,
                                                            :
                        Defendant.
------------------------------------------------------------X
```
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE PAUL A. ENGELMAYER, UNITED STATES DISTRICT JUDGE

## INTRODUCTION

Patria Nunez ("Nunez") commenced this action pro se against the Commissioner of Social Security ("Commissioner"), seeking review of an administrative law judge's ("ALJ") decision finding her ineligible for disability insurance benefits ("DIB"), pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and Supplemental Security Income ("SSI") payments, under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Before the Court is the defendant's unopposed motion for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## BACKGROUND

*Administrative Procedural History*

On July 2, 2009, Nunez filed applications for DIB and SSI, alleging a period of disability beginning on January 1, 2009. (Julio Infiesta Decl. Ex. 1, Tr. 66-68). Her applications were denied on July 20, 2009. (Tr. 34). On October 26, 2010, plaintiff testified at a hearing before an

1

Administrative Law Judge ("ALJ"), without an attorney and with the aide of a Spanish language interpreter. On October 29, 2010, the ALJ found that Nunez was not disabled because she engaged in substantial gainful activity during her alleged period of disability. (Tr. 13-16). On September 22, 2011, the Appeals Council denied Nunez's request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). This action followed.

*Non-Medical Evidence*

Nunez was forty-three years old at the time of the hearing. (Tr. 24). She testified at the October 26, 2010 hearing that she worked as a home attendant. (Tr. 27). Nunez stopped working for three months, due to her emotional health problems, following her hospitalization in June 2009, but returned to work after those three months. (Tr. 27-28). She continued seeing a psychiatrist after the 2009 hospitalization. (Tr. 28-29). At the time of the hearing, Nunez was working thirty-two hours per week as a home attendant, and was taking medication to control her condition. (Tr. 28-29). Nunez was paid $9.50 per hour for her work. (Tr. 113, 121). Nunez earned $12,150.53 in 2007, $11,639.58 in 2008, and $11,761.33 in 2009. (Tr. 76). According to Nunez's earning records, she was insured for disability insurance benefits based on the work activity in each of these years. (Tr. 84-88, 93).

*Medical Evidence*

Nunez was admitted to the Columbia-Presbyterian Emergency Room, on June 2, 2009, and was transferred to the New York Psychiatric Institute ("NYPI"). (Tr. 158). Dr. Sonya L. Martin's June 3, 2009 progress note indicates that Nunez was assessed with "Psychosis NOS, r/o MDD with psychotic features" and prescribed medication. (Tr. 166). Nunez was discharged from NYPI on June 26, 2009. (Tr. 162).

Nunez was treated by a psychiatrist, Dr. J.A. Amat ("Dr. Amat"), at the Inwood Clinic of the Washington Heights Community Services, beginning on June 29, 2009. (Tr. 174, 176-77). On July 1, 2009, Dr. Amat diagnosed Nunez with "psychosis NOS" and prescribed medication. (Tr. 179). On July 14, 2009, Dr. Amat diagnosed Nunez with "psychosis, NOS, in partial remission," and prescribed medication. (Tr. 183). On July 23, 2009, Dr. Amat noted that Nunez was "psychiatrically stable." (Tr. 183). Nunez continued treatment through September 2009. (Tr. 188-89).

On September 17, 2009, Dr. Carol Wiener, a consultative psychologist, examined Nunez, diagnosing her with "Depressive disorder NOS" and "Panic disorder with agoraphobia." (Tr. 201). On that same date, a consultative physician, Dr. Benjamin Kropsky, conducted an internal medicine examination of Nunez, diagnosing her with psychotic episodes, probable gastric reflux disease and lumbar disk with lower back pain. (Tr. 205).

Dr. T. Harding, a state agency psychologist, reviewed the record on October 19, 2009, and assessed Nunez's functional abilities. (Tr. 208-30). He concluded that Nunez could perform work involving simple tasks. (Tr. 230).

On October 15, 2010, Dr. Amat completed a functional assessment report for Nunez, in which he noted her ability to assume increased mental demands associated with competitive work. (Tr. 239). In the psychiatric report completed by Dr. Amat on October 15, 2010, he noted that, since Nunez's discharge on June 29, 2009, she had been "stable on meds," and had a positive response to medication. (Tr. 242). He assessed that Nunez had no limitations in activities of daily living and opined that her limitations were mild in all categories of functioning, except her ability to respond appropriately to co-workers and customary work pressures and to perform simple and complex tasks on a sustained basis in a full-time work

setting. (Tr. 247-48). Dr. Amat stated that Nunez "has been able to do work half-time." (Tr. 248).

*The ALJ's Decision*

On October 29, 2010, the ALJ rendered his decision. (Tr. 13-16). He stated that Nunez alleged, in her Title II and Title XVI applications, that disability began on January 1, 2009. (Tr. 13). The ALJ found that Nunez engaged in substantial gainful activity from: (a) the alleged onset disability date of January 1, 2009, through June 2009; and (b) October 2009, through the date of the ALJ's decision. (Tr. 15). The ALJ determined that Nunez worked as a home attendant from July 1, 2008, until June 2009, and she earned $9.50 an hour. (Tr. 15). The ALJ found that, at the time of the hearing, Nunez was working as a home attendant, and she only stopped working for three months after being psychiatrically hospitalized in 2009, but returned to work after that. (Tr. 15). The ALJ stated that Nunez engaged in substantial gainful activity during her alleged period of disability and "is not disabled regardless of medical severity and other considerations." (Tr.16). The ALJ found that Nunez had not been disabled from January 1, 2009, through the date of the decision, because "[t]here has been no continuous 12-month period during which [Nunez] has not engaged in substantial gainful activity." (Tr. 16).

*Defendant's Contentions*

The defendant contends that substantial evidence supports the ALJ's finding that Nunez was working and performing substantial gainful activity, making her not disabled at step one of the sequential evaluation. According to the defendant, that evidence includes Nunez's statements from her applications that she had worked as a home attendant "for eight hours a day, five days a week through June 29, 2009." It also includes her testimony that, at the time of the hearing, she was working as a home attendant for thirty-two hours per week, and that she only

stopped working for the three months following her June 2009 hospitalization. The defendant contends that Nunez confirmed that, despite her symptoms, she was able to work. He maintains that the ALJ considered Nunez's testimony and her hourly pay of $9.50, finding, properly, that this constituted substantial gainful activity. Moreover, Nunez's testimony is consistent with the record evidence, showing that she returned to work as early as July 30, 2009. Nunez reported at the consultative examination that she had been working, and she told Dr. Wiener, on October 17, 2009, that she was currently working part-time as a home attendant, that she worked about twenty hours per week and had been doing that for about one month. Moreover, Dr. Amat concluded in his report that Nunez had been able to work half-time.

       The defendant contends that Nunez's earnings are also consistent with the ALJ's finding that she was performing substantial gainful activity in 2009. Nunez testified she was paid $9.50 per hour for thirty-two hours per week, which would yield $304 in pay weekly, or approximately $1,216 per month. According to the defendant, the monthly amount of countable earnings indicating substantial gainful activity, in 2009, was $980 per month, which shows that Nunez was earning more than the threshold amount for substantial gainful activity pursuant to the Social Security Administration's ("SSA") regulations. Furthermore, Nunez's earnings of $11,761.33 for 2009, are also consistent with the ALJ's finding because, notwithstanding the period of three months when Nunez did not work in 2009, the average of her earnings over the course of the year are sufficient to meet the threshold of $980 per month to constitute substantial gainful activity in 2009.

## DISCUSSION

### *Legal Standard*

       "After the pleadings are closed—but early enough not to delay trial—a party may move

for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

> A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
>
> Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted).

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (quoting Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (internal citations omitted). "It is not the function of a reviewing court to decide *de novo* whether a claimant was disabled, or to answer in the first instance the inquiries posed by the five-step analysis set out in the SSA regulations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (internal citation omitted).

To qualify for disability benefits, an individual must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); see 42 U.S.C. § 1382c(a)(3)(A). "Substantial work activity is work activity that involves doing

6

significant physical or mental activities" and "work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. §§ 404.1572(b), 416.912(b). Generally, in determining whether the claimant engaged in substantial gainful activity, the Commissioner compares a claimant's earnings from the work activity to the amounts prescribed in the Commissioner's regulations. See 20 C.F.R. §§ 404.1574-404.1575, 416.974-416.975. The SSA regulations establish a five-step process for determining a disability claim. See 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

> If at any step a finding of disability or nondisability can be made, the SSA will not review the claim further. At the first step, the agency will find nondisability unless, the claimant shows that he is not working at a "substantial gainful activity." At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy.
>
> Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003) ( internal citations omitted).

The SSA regulations provide: "At the first step, we consider your work activity, if any, If you are doing substantial gainful activity, we will find you are not disabled . . . regardless of your

7

medical condition or your age, education, and work experience." 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b).

*Application of Legal Standard*

The ALJ applied the correct legal standard in finding that Nunez was not disabled because that finding was made at the first step of the sequential analysis, and the ALJ did not consider Nunez's medical condition, her age, education or work experience, after he found that she engaged in substantial gainful activity during the period of the alleged disability. The ALJ's decision is supported by substantial evidence. Nunez testified that the only time she did not work as a home attendant was the three months following her June 2009 hospitalization, and that, at the time of the hearing, she worked thirty-two hours weekly, earning $9.50 per hour. The record evidence, including Nunez's earnings of $11,761.33, in 2009, corroborates her testimony and supports the ALJ's finding that Nunez engaged in substantial gainful activity from the alleged onset date of January 1, 2009, through June 2009, and from October 2009, through the date of the decision. Since the ALJ applied the correct legal standard and his decision is supported by substantial evidence, granting the defendant's motion is warranted.

## RECOMMENDATION

For the foregoing reasons, I recommend that the defendant's motion for judgment on the pleadings, Docket Entry No. 15, be granted.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable

Paul A. Engelmayer, 40 Centre Street, Room 2201, New York, New York, 10007, and to the chambers of the undersigned, 40 Centre Street, Room 425, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Engelmayer. ***Failure to file objections within fourteen (14) days will result in a waiver of objections and will preclude appellate review.*** See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985); Cephas v. Nash, 328 F.3d 98, 107 (2d Cir. 2003).

Dated: New York, New York
       July 18, 2013

Copy mailed to:

Patria Nunez

Respectfully submitted,

*Kevin Nathaniel Fox*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE